All right. We'll hear our next case, which is the State of Maryland at Al's versus the 3M Company. Mr. Clement, we'll be glad to hear from you. Good morning, Your Honors, and may it please the Court. If Maryland and South Carolina had simply sued 3M for PFAS remediation in a single lawsuit, the appropriateness of a federal forum would be obvious. A federal court would then determine not only the availability of a federal contractor defense, but whether PFAS associated with the federal activity could be separated from PFAS associated with private activity, and if so, what percentage of PFAS is shielded by the federal defense. The states seem to believe that by bifurcating their claims and disclaiming any AFFF liability in one of them, they can keep that suit in state court. But that would simply transfer questions about whether PFAS from federal and private activities can be disentangled, and if so, what percentage to allocate to non-federal activities to state court. Instead of litigating the scope of the federal defense in federal court, the parties would be litigating essentially the same questions in contesting the scope of the disclaimer in state court. Federal courts, including the First Circuit just a couple of weeks ago, have rejected similar efforts to use disclaimers that stop short of foreclosing all liability for federal activities to deprive defendants of a federal forum. Is it impossible to identify pollution sources once the PFAS has been commingled? Is it impossible to do that, or can it be done? We don't think it can be done, Your Honor. That is part of the allegations in our petition for removal. And part of the problem here, just to be clear, is that it's the same chemical, it's the same chemical compound in the AFFF as in the non-AFFF. So it's not as if there's some way you can sort of, you know, in the water source, figure out which one you have in some sort of definitive way. And so as a result, it's our position that we're entitled to the federal defense essentially for all of it, because if you can't disentangle it, then you're imposing liability for activities taking place under federal direction. Now obviously a court could disagree with us, either as a factual matter or as a legal matter, but then the next question would be, okay, how are we going to try to allocate liability from the activities taken under federal direction and the activities undertaken under non-federal direction? I thought that was sort of your threshold argument here, that in order to make this decision, call it a causation decision between the military product and the non-military product, that that decision alone belongs in a federal court. Absolutely, Your Honor. You know, you can think of it, there's, in my mind, there's two questions that belong in federal court. One is more of a causation question, which is, you know, gets to the idea of can you disentangle this at all. The other one is what I call an allocation question, and I would say, I don't know which one's the threshold, but I'd say either one of those questions really belongs in federal court. And the reason I would say that is at the end of the day, I think that's really a question about the scope of the federal defense. And the question about the scope of the federal defense really belongs in federal court. That's part and parcel of the entitlement of somebody with federal officer removal, is to be able to litigate not just the existence of the defense, but the scope of what it protects. So let's say we agreed with you, the case stays in federal court, and in some way the experts are able to agree that 40% is military, 60% is non-military. Does the case stay in federal court at that point? Yes. If you could, okay. I mean, we're entitled to essentially a federal court determination of that. Ultimately, I imagine that would be a jury question in the most likely scenario. Again, I think we would be putting on experts that would say, you can't disentangle it at all, so you really can't make that 60-40 determination. I assume my friends from the other side would have an expert that would say something different. But all of those contested issues belong in federal court, because at the end of the day, they really are questions about what's the scope of the federal defense in these cases. And one of the things that I do think distinguishes this from, to be sure, not from the New Hampshire and Maine cases, but from most of the federal officer removal cases, is you do have these two complaints sitting side by side. Excuse me, Your Honor. And so this is not a situation where the plaintiffs are saying, in our judgment, there's no relationship between what you did under federal officer direction and the contamination. They're saying that to a fairly well in one of their two lawsuits. And they admit that that one essentially can be in federal court. But under those circumstances, you know, if the question is ultimately, is the position in the removal papers plausible, that you can't disentangle them, that they are commingled, and there is going to be this difficult allocation decision. Of course that's plausible. I mean, you know that from our removal papers, but essentially you know that from their other lawsuit. And this, of course, very much distinguishes this case from the case in Illinois, the Raul case, where somebody, where the state there was really focused on a single site. There's no parallel lawsuit. So they were able to make that kind of extraordinary disclaimer that not even one, we're going to try to prove this, that not even one morsel comes from the federal activity. Let me ask you this. It's been a while. I looked at this stuff last week and I forgot to kind of refresh myself. Did the plaintiffs in this case, did they plead just state law claims? I think they did plead both state law claims in both their 8FFF claim and their non-FFF claims. Did they plead any federal cause of action? I don't believe they do, and we're not here on sort of, you know, 1331 jurisdiction. We're here on federal officer removal jurisdiction. I understand that. If they plead just state law claims, why aren't we applying, at this stage, why aren't we applying the well-plead rule to keep it in state court? Because federal officer removal is an exception to the well-pleaded complaint rule? We don't know that yet. What's that? We don't know that yet because we've got BP going up and we've got a case, we've got several cases across the country going up on that issue. Oh, I mean, with all due respect, Your Honor, I don't think there's any doubt. I think it is Willingham and a host of Supreme Court decisions make clear that you do not need, for federal officer removal, the test is not the well-pleaded complaint. The whole theory of federal officer removal is that the colorable federal defense that's raised in the petition for removal is the basis for federal jurisdiction. And, you know, whatever tricky issues might be in some of these other cases, that is bedrock law. That's why these claims can be in federal court. And, as I say, I don't think, you know, my friends will correct me if I'm wrong, but for purposes of the claims being based on state law, there aren't differences between their complaint that focused on AFFF, which they accept has been removed to federal court and they haven't even tried to remand it. So I don't think anybody here is taking the position that these cases shouldn't be in federal court based just on the well-pleaded complaint. I think everything comes down to the removal arguments that we've made. And on that, the basis for the federal jurisdiction is the federal contractor defense. And then the question just becomes, excuse me, as was already alluded to, they've essentially given away the defense in the non-AFFF cases because those are not under federal direction. But that leaves these questions of allocation and causation that still have to be decided. Well, that's the problem in all those cases is causation, whether they can prove it or not. Even under a state law claim, causation is a big problem for a plaintiff. I understand that. Absolutely. But the causation problem in the context of this case, it's not just a state law question. It really is a question about the scope of the federal defense. And does the federal defense cover all of what's alleged, most of what's alleged, 80%, 20%? And those are all questions that I think need to be decided in federal court because they're not just garden variety state law causation claims, though my friends take that position. I just don't think you can understand it that way. And, you know, I think another way to try to think about these cases is it is black letter law, and I don't think my friends disagree, that if the nature of their disclaimer had simply been, we disclaim anything that's not covered by federal contract or defense. I think they would admit, well, that kind of disclaimer doesn't work because that just transfers all of the issues about the scope of the federal defense. You could say, well, now they're scope of the disclaimer issues, but no court has accepted that because all of the same basic issues would have to be decided in order to figure out whether, what's the scope of the disclaimer, what's the scope of the federal defense, and those questions belong in state court. And really the difference here is that my friends on the other side have tried to disclaim the, you know, everything that is AFFF. And there is a slight difference between sort of AFFF and MilSpec AFFF, and it's the latter that's really covered by the federal defense. But nobody thinks that you can really carefully distinguish between those two, MilSpec AFFF and AFFF. And so what they've effectively done with this disclaimer is they said, all right, we are looking to bring nuisance claims and get an abatement for the nuisance. We're doing it statewide. We want to take Maryland as an example. We want remediation for the Chesapeake Bay and the Potomac River. But we're going to split it up between these two lawsuits, and 3M removes both of them. And my friends on the other side say, okay, well, the one that involves AFFF even will admit that should stay in federal court or they'll at least say we're not going to try to remand it to state court. So really the question is can they get around that and keep half the lawsuit or one of these lawsuits in state court simply with this disclaimer? And as I've alluded to, I think our position, which I hope is clear, is that, no, you can't avoid federal court in that way, and that's principally because the causation and allocation questions remain questions about the scope of the federal defense, and those questions we have essentially an entitlement to in the federal forum. And obviously we sent a 28-J letter recently on the Express Scripts case out of the First Circuit, but that case I think powerfully supports the position that we're taking here today. That was a case where essentially the First Circuit credited the allegations of the defendant and essentially said that the defendant is taking the position that the federal and state activities or the activities under federal direction and the activities not under federal direction are indivisible, and under those circumstances we have to credit the defendant's theory of the case. And in order to give them the federal forum that they're entitled to under the federal officer removal statute, we need to essentially allow that case to proceed in federal court. And the plaintiffs in that case will take the position, no, no, we can divide it or we can allocate it, but all of those questions are questions that ultimately should be decided in the federal court. So both parties cite a prior decision of ours, Wood v. Crane, as supporting them. So why don't you give us your take on why Crane bolsters your position? Sure. I mean, I'll start with the observation that I don't think that decision had to really squarely focus on this allocation question. And I think part of that is because you had this unusual situation, Wood v. Crane, where you had valves and the valves ultimately, the position of the defendant was the valves didn't have asbestos, but the valves were done under federal direction. And then there were gaskets, and the gaskets had asbestos, but they weren't done under federal direction. So there was a clear differentiation between the valves and the gaskets. And then there was a disclaimer after the case was removed to federal court, and I'll get back to that in a second, but the disclaimer there wasn't in the original complaint. It was only after the case came to federal court. And then at that point, the reason I say I don't think the court had to wrestle with the question is because everybody seemed to treat the valves and the gaskets as just being sort of very different, very discreet. And the court's ruling, obviously, was that since the plaintiff's had, once it got into federal court, disclaimed the only basis for the federal contractor defense, the federal contractor defense sort of fell out of the case. And I just want to get back to the slight difference in posture there, which I think both underscores that the court didn't definitively decide the question, but also I think is an important difference. This court was concerned in that case about the possibility of strategic disclaimers, but because the disclaimer in that case didn't occur until the case had already been removed to federal court, this court twice said, you know, we don't have to worry about abuse here because there's discretion in the district court because there was federal jurisdiction at the beginning of when the case was removed. If the federal district court judge thinks that the disclaimer was strategic or prejudiced the defendant in some way, they have discretion to police that. And that discretion to police doesn't apply in a circumstance like this where there's a disclaimer in the original lawsuit. And so I think for multiple reasons that decision sort of doesn't decide this case. And I think ultimately there's language in the opinion that at least we read to suggest that if you didn't have this clear bifurcation between the valves and the gaskets, then it probably would have stayed in federal court. You've got some rebuttal time, so we'll look forward to hearing from you then. And now we'll hear from Mr. Scher. Thank you, Judge Agee, and may it please the court. The purpose of the federal officer removal provision is to allow federal officers or their agents to present federal defenses in a federal forum. But the state courts in these cases will never address any actions by 3M for or relating to any federal conduct, nor address or much less resolve any federal contractor defense because the charged conduct in these cases relates to different products, different routes of pollution occurring, and different even PFAS compounds as between AFFF contamination and non-AFFF contamination. So the 3M parties say that you can't differentiate. This is in their notice of removal, which reverses the normal presumption in this case. We are to take what they put in the notice of removal as true as alleged, at least at this point. And so they say, well, you can't do that, that these are indivisible injuries and the causation question of what percentage goes to the military product, what percentage goes to the non-military product, is a part and parcel of the federal officer removal statute. To make that decision itself, it's required to be in federal court. Yes, Judge Agee, and that's their argument and it's wrong. And the reason it's wrong is because 3M alleges only that it made mil-spec AFFF for the federal government. It does not claim it also made non-AFFF products for the federal government. So there's no way that 3M could be held liable for any official act for which it even arguably has a federal contractor defense in these non-AFFF cases. So from a practical standpoint, just take a geographical point in Maryland on the Chesapeake Bay, where you've got a multitude of military installations all around there and presumably other locations where the chemicals could have been used but not at a military source. And so now they're in the groundwater and they're all mixed together. How do you differentiate what goes where? Well, Your Honor, there are tools for differentiating, but our point, the primary point here is it doesn't matter because as all four of the district courts, two in the First Circuit and two in this circuit have held, what the disclaimers mean with respect to the AFFF products is that the plaintiff states have assumed the burden with respect to the non-AFFF contamination. If they don't meet that burden, either because the contamination cannot be identified as one or the other or because there's no way of unwinding it where AFFF is present, then they lose. But they lose without anything having to do with federal defense or federal officers or federal direction of control. Well, I thought the point here was that while that may be factually accurate, that the point of the federal removal statute is that it allocates to a federal court the authority to make that decision to the exclusion of a state court. No, Your Honor, there's no case, no case that holds that a case that is focused on non-federally related conduct, which the non-AFFF cases are, can be rewritten by a defendant because it wants to assert a defense that doesn't apply to the charged conduct in the non-federal conduct case. No case says that. Let me ask you a fundamental question here. Do you agree or disagree that the PFAS injury is an indivisible injury or a divisible injury? It's a divisible injury and it's an allocable injury, but it doesn't matter. Because in the hypothetical instances where there could be commingling and there could be an inability to meet the burden with respect to the non-AFFF cases, then the states, as the district court in Maine said expressly, then the states, by assuming that burden, lose on that issue. You never get to any issue of federal direction or control. They don't, my friend on the other side, doesn't contend that non-AFFF products were prepared for or by or under the supervision of any federal agency, nor that a federal contractor defense exists as to those claims. And those are the only claims raised in these states' non-AFFF cases. I don't want to be repetitive, but I want to ask the question I had to see. I think it's the same thing you're saying. Was the AFFF product produced exclusively for the military at any time or was it just another product that 3M was manufacturing and the military purchased it from time to time? Is that your scenario? No, Your Honor. So the non-AFFF products not produced for the government ever. There's no claim that any of the compounds that are the subject of these lawsuits have any relationship to any federal conduct, any federal supervision, any federal officer direction or control. They don't relate to or arise out of any such federal nexus, nor are they subject to a federal contractor defense. So do you assert that this AFFF stuff, that 3M made two separate products? So let me be very clear here. If you're talking about the aqueous, I always call it firefighting foam, but it's actually... Yeah, that's probably better to stick with. The AFFF. There are two kinds of AFFF. They are indistinguishable chemically. They are the subject of the MDL pending before Judge Gergel in South Carolina. And there is MIL-SPEC, that is Military Specification AFFF, which is used by military installations and related facilities, and that arguably was created pursuant to federal contracts and are subject to a federal contractor defense. That issue being litigated in the MDL. There is also commercial grade AFFF, which is provided to public entities and firefighting departments and certain industries, and that is chemically indistinguishable from the military specifications AFFF and is not subject to... If it's indistinguishable, how is an expert going to divide it up? Neither of those products is the subject of these lawsuits. These lawsuits relate to a wide range of products like Chemguards, Fabric, Waterproofers, Teflon, a wide variety of consumer and industrial processes. They reach the environment from different sources. They reach them from landfills and public and industrial waste treatment facilities, not firefighting facilities, and they involve both different PFAS compounds and different associated compounds. So to answer, to pull this back to Judge Floyd's, I think, original question, yes, experts will be able to separate the non-AFFF products in part by the differences in PFAS compounds that are in them. In fact, the Judicial Panel on Multidistrict Litigation denied the motion to transfer Marilyn's case to the MDL pending before Judge Gergel in large part because it involves different products and different chemicals. And in the administrative record, there's the declaration of Mr. Reynolds from South Carolina who talks about the differences in the chemical composition both as a matter of PFAS and other compounds that allow experts to identify and allocate. But none of this matters. You can assume the truth as put forward in the notice of removal that there may be some sites at which AFFF, mil-spec and non-mil-spec, is commingled with non-AFFF products. And even if you assume that they're correct, that you cannot allocate at those sites, what that means in these cases is that the states will not be able to satisfy their burden of proof with respect to that. And the disclaimer means that they lose on that issue. But there's no federal – I'm sorry, Your Honor. That's getting to the point that 3M is making, isn't it? That it's not about mil-spec AFFF and consumer AFFF. That 3M is making the point that the PFAS is indistinguishable from the other products that don't contain that, and we have to look at their notice of removal and see if that's plausible. And their point is, once you're in court to find out if the disclaimer governs a certain amount of the contamination or not, the court is going to have to, or some fact finder is going to have to allocate, well, this percentage might be coming from work done for the military and this percentage isn't. And that that very allocation gets us into something that belongs in federal court. I think that's the argument. What is your response to that? Well, it is their argument, but it's wrong. And it's wrong for two reasons, two primary reasons. The first is you have to look at the charged conduct. And Express Scripts illustrates this. The charged conduct in Express Scripts was that the negotiations between the private and the federal contracts were inextricably intertwined. You could not disentangle those negotiations, and as a result there was an availability of a potential federal preemption defense. There was a colorable defense. As to the charged conduct, the charged conduct in these cases, however, is very different. You have on the one hand the AFFF related products, some of which is subject potentially to the assertion of a defense, whether it's valid or not will be determined in the multi-district litigation. But then you have this wide variety of other PFAS compounds in other products that are factually distinguishable. And even if you assume, as I said before, even if you assume that there are some hypothetical unidentified as of now, sites at which there's commingling and the state cannot meet its burden with respect to the non-AFFF, then the consequence of that is never the assertion of anything related to federal authority or the federal contractor defense. It simply means that the states lose. That's what the disclaimer does, and that's one of the reasons why these disclaimers are valid and not either jurisdictional disclaimers nor circular in any way. So what about the point that... Go ahead, Judge Rushing. I was just going to ask about the abatement and mitigation, which is a request in the complaint, and the states have not disclaimed mixed PFAS sites. So what's your response to your opponent's argument that when it comes to these requests for abatement and mitigation, the whole enterprise of trying to award that relief in a mixed PFAS contamination site is inevitably going to run into this federal problem? Well, again, it's wrong, Your Honor, and it's wrong. If you look at the disclaimer, if you look at Maryland's disclaimer, for example, which is in paragraph 13 of their complaint, which is Joint Appendix 46, the state does not seek any remediation, restoration, damages, or any other relief related to any PFAS contamination caused by AFFF in the non-AFFF. There's a reciprocal disclaimer in the AFFF complaint. So to the extent that there might otherwise be any issue with injunctive relief in a co-mingled plume... I get that on paper, but how would that actually happen? If you have, you know, one body of water that has both, you know, the same oysters are being affected by both, you're just saying we would disclaim all abatement for that? No, Your Honor. We would disclaim the abatement proportional or otherwise when we get... I mean, we're a long way from the relief phase of the case, but you could do it by use of an equitable fund, for example, as South Carolina expressly pleads in its prayer for relief, and you could do it that way. I see my time is up, and I don't want to... I have one more question for you, and that is, as I ask opposing counsel the same thing, I referred to Wood v. Crane. So I wanted to get your take on that case, or if there was another one you thought was particularly persuasive from your standpoint. Well, the other case is the Ninth Circuit's decision in the Tyco case, because there what you had was a plaintiff who claimed his injuries was the result of handling and dealing directly with AFFF, commercial AFFF, and the defendant came in and said, well, no, we think your cancer was caused by drinking water that was contaminated by MilSpec AFFF, and the plaintiff disavowed the water remedy, and the Ninth Circuit said the defendant cannot sustain removal on that basis. Wood v. Crane is important, I think, Your Honor, for two reasons. The first is it said that the nature of the disclaimer was clear and expressed and that there was no reason to think that the state court would not hold the plaintiff to it. There was no issue in Crane about an indivisible injury. Well, there was, Your Honor. Actually, there was. But I don't think anybody ever raised it. Well, the defendants did in their reply brief by citing to a footnote in the defendant's brief in this court, and the first sentence in that is where the defendant says, and I'm paraphrasing, although I could have the, let me find the exact language. Here's the exact language I'm quoting. It is impossible to separate plaintiff's claims into separate claims on the basis of exposure to valves on one hand and gaskets on the other, unquote. That is exactly what they're asserting here, and this court said the disclaimer of the valves meant that that disclaimer was going to be respected in the state court, even though the defendant argued that they were indivisible. All right. Thank you very much. Your co-counsel has some time. Thank you, Your Honor. Mr. Solomons. May it please the court, Your Honor. Gibson Solomons for the state of South Carolina. There's a simple reason that Judge Gergel, who has examined thousands of these PFAS cases, the JPML and the District Court of Maryland all came to the same conclusion. That is, a defendant may not rewrite a plaintiff's complaint and the disclaimer contained therein to assert a defense concerning conduct falling outside the complaint to manufacture federal jurisdiction. To get to the assertion and assessment of the federal contractor defense, a plaintiff must necessarily allege that the defendant's conduct, arguably protected by the doctrine caused the plaintiff's damages. In this instance, South Carolina does not make that allegation. And to make the issue crystal clear, it disclaims any recovery of damages that stem from that conduct. As to the questions raised by this court, commingling creates an issue of fact for a jury to determine what the more likely than not cause of damages are and if appropriate to apportion those damages. That is it. As this court stated in Anne Arundel, which you asked a question, Judge, and said, would you point to any other cases? I think the cases in the city of Baltimore and Anne Arundel are persuasive in this instance. Well, the conduct in those cases was not the production of petroleum products. It was a separate fraud claim. It certainly was. And there was no claim there that in the production of petroleum products, there was a federal government or military requirement that you make these representations about climate. So it doesn't seem like to me that those are very close. Well, Your Honor, you have asked a question of both counsel about indivisible damages. The inquiry has always been, is the conduct at issue indivisible? Not, are the damages indivisible? The apportionment of damages is something that the trier of facts have been doing since we began having cases with multiple defendants. That's not a unique issue. And the fact that a state court may apportion damages and a portion of that damages would be attributable to non-AFFF products and a portion of that damages would be attributable to AFFF products, which are then excluded, does not impose or infringe upon this court's jurisdiction to assess the federal contractor defense precisely because of the disclaimer. At that point in time, the disclaimer becomes effective and the assessment of the validity of the federal contractor defense becomes a nullity because factually the disclaimer acts as if it's proven. Now, I do want to make a correction. We have not conceded whether the federal contractor defense has application in the AFFF cases pending in the MDL. We just simply haven't gotten to that analysis. And in this case, we never will precisely because of the disclaimer. It's a factual assessment, not a legal conclusion. And they're blurring that line. I do want to make the one thing, Judge, that the reason I point to the City of Baltimore and Anne Arundel is in those climate change cases, if we were looking at harm, I can't think of a more commingled harm than climate change. There is a multiplicity of factors that could weigh in as far as what is causing the climate change versus what is not causing the climate change. So that's why I point to that. I do, and I also want to point to a line out of those cases. It is the act for which the defendant is being sued, not the plaintiff's entire civil action in a general sense that must relate to the asserted federal duty. And I see I'm out of time here. Thank you very much. Mr. Clement, you've got some rebuttal time left. Thank you, Your Honors. I think if one thing is clear from the argument today, there's a factual dispute about whether these different kinds of PFAS are divisible or indivisible. There are going to be other factual disputes about how much of this contamination in any one place is attributable to MilSpec, AFFF, or AFFF, PFAS, and other products. They're right that they're suing in this case for the other products, but that doesn't make the federal defense that we can't be held liable for the military products go away, and it doesn't make any practical difference whether you say that that allocation decision is about the scope of the federal defense or the scope of their disclaimer. I think if you just put this in practical terms, they are in this non-AFFF case, they are looking for abatement of the Potomac River and the Chesapeake Bay and the oysters and the blue crabs. Now, there's going to be a dispute about first whether or not these things are divisible at all, but if we get past that issue, there's going to be a dispute. And the plaintiffs are going to say, all of this has to do with the non-AAAF stuff. We get to recover, I don't know, 95 percent, 98 percent of it. It's all Scotchgard. It's all Teflon. And we're going to get up and we're going to say, no, actually this is all because Joint Air Force Base is right there by the Potomac, and there are all these military installations right by the Chesapeake. That's why it shouldn't be 95 percent. Maybe it should be 80 percent that's covered by the federal defense. That dispute is going to happen in one court or the other. It's either going to happen in state court or it's going to happen in federal court. And the federal officer removal cases make clear that we are entitled to a federal forum to make that defense. That's just not necessarily true. The argument has been going on. You want to be in a federal forum and they want to be in a state forum. Why is the state court just as capable of making those decisions that you're arguing about? Because that federal officer removal statute is not absolute. There are things that have to be proven. Why shouldn't it be done in the state court where they brought the case in the first place? Well, the whole point of federal officer removal is the defendant gets the choice. I'm not saying that the state courts are wholly incapable of adjudicating these disputes. If we decided not to remove, then this suit could go forward. But we decided to remove. And our entitlement under the federal officer removal statute is a federal forum to adjudicate these disputes. And they're the same basic disputes. We're entitled because of the federal officer removal statute for them to take place in federal court. Now, my friend said there's no case that supports this. Well, with all due respect, he's dead wrong. The Baker case out of the Seventh Circuit is essentially on all fours, given their unwillingness to make the kind of disclaimer that the Seventh Circuit credited in the Raul case. There you had contamination of the same things. Some of it was traceable to Freon that was produced under a government contract. Some of it came from other sources. The Seventh Circuit said repeatedly, these causation issues and allocation issues, they are issues about the scope of the federal defense. Never mind the disclaimer. They have to be adjudicated in federal court. The Express Scripts case from the First Circuit is also directly on point. With all due respect to my colleague, it was not the plaintiffs there that said this was all indivisible. That was in the notice of removal. And what the First Circuit said at great length was you have to credit the theory of the case in the removal, and you have to credit the plausible allegations in the petition for removal. Our plausible allegations are this is indivisible, and the allocation question, because of commingling, is going to be a question about the scope of the federal defense. Those issues belong in federal court. Thank you, Your Honors. All right. Thank you very much to all counsel. We appreciate your argument very much. We'll come down and greet counsel. And first I'd ask the clerk if she will adjourn court until tomorrow. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: G. Steven Agee, Allison J. Rushing, Henry F. Floyd